UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| SHANE MOFFAT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-12067-DJC |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                         January 12, 2012

Plaintiff Shane Moffat, currently serving a life sentence for first-degree murder, brought an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Department of Justice ("DOJ"), the Drug Enforcement Agency ("DEA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Federal Bureau of Investigation ("FBI"). Moffat sought relief both in the form of additional information and an award of attorney's fees. The Court granted summary judgment in favor of the Defendants on the FOIA claim and held that Moffat could not proceed with a petition for attorney's fees against the DEA and the ATF, but permitted Moffat to pursue a fees petition against the FBI. Moffat v. U.S. Dep't of Justice, 2011 WL 3475440, at *19-20 (D. Mass. Aug. 5, 2011). Moffat subsequently moved for a fees award of $14,356.25 against the FBI. For the reasons discussed briefly below, Moffat's motion is GRANTED IN PART and Moffat is awarded attorney's fees in the amount of $1,600.

Courts "may assess against the United States reasonable attorney fees" in any FOIA case "in

1

which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant has substantially prevailed if he obtains relief through "a voluntary or unilateral change in position by the agency" as a result of the complaint (as opposed to a prior administrative FOIA request) and "if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II); Judicial Watch, Inc. v. Bureau of Land Mgmt., 610 F.3d 747, 749 (D.C. Cir. 2010). "In order to prove that a plaintiff substantially prevailed, a plaintiff must establish that the filing of the litigation was necessary and had a causative effect on the disclosure of the requested information." Maynard v. Cent. Intelligence Agency, 986 F.2d 547, 568 (1st Cir. 1993) (internal quotations and citations omitted).

Although the Court granted summary judgment to the FBI on Moffat's FOIA claim, Moffat has substantially prevailed against that agency for the purposes of § 552. As the Court noted during the summary judgment proceedings, the FBI provided Moffat with no records in response to his administrative FOIA requests but did provide him with substantial records after performing a more thorough search in response to his complaint. "[C]hronology, by itself, however, is not determinative," Maynard, 986 F. 2d at 568, since "'the mere fact that the documents requested were not released until after the suit was instituted, without more, is not enough to establish that a complainant has substantially prevailed.'" Id. (quoting Cazalas v. U.S. Dep't of Justice, 660 F.2d 612, 619 (5th Cir. 1981)). Here, however, the FBI has expressly conceded that it performs only "main" file searches in response to administrative FOIA requests and that it performed "cross-reference" searches responsive to Moffat's administrative requests only upon receipt of his subsequent complaint initiating the instant case. See Second Declaration of David M. Hardy, Section Chief of FBI's Record/Information Dissemination Section, D. #25 at ¶¶ 5-6. To be clear, Moffat's substantial prevailing has to do with the FBI's additional searches and release of

2

documents in response to Moffat filing his complaint and not with Moffat's subsequent unavailing litigation with regard to the adequacy of the FBI's searches or the validity of the FBI's redactions within the eventually disclosed documents.

After determining whether a FOIA plaintiff has substantially prevailed, courts must resolve a second issue before awarding fees: whether the "plaintiff [is] entitled to an award based on a balancing of equitable factors," Maynard, 986 F. 2d at 568, including "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." Aronson v. U.S. Dep't of Hous. and Urban Dev., 866 F.2d 1, 3 (1st Cir. 1989) (quoting Crooker v. U.S. Parole Comm'n, 776 F.2d 366, 367 (1st Cir. 1985)). These factors cut in Moffat's favor. As to the first factor, "a successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing the government into compliance with the language of the Act and by securing for society the benefits assumed to flow from the disclosure of government information," Crooker, 776 F.2d at 367, and "type of plaintiff that ordinarily fails to meet the first criterion [i]s 'a business [that] was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.'" Id. (quoting S. Rep. No. 854, 93 Cong., 2d Sess. 17 (1974) (the Senate Report accompanying the FOIA legislation)). Moffat is not in the narrow category of FOIA plaintiffs who fail to meet the first factor. As to the second and third factors, although Moffat has an intense personal interest in using the records he sought to protest his innocence, "a prisoner has no conceivable commercial interest in seeking access" to the sort of records pursued by Moffat, id. (emphasis added), and Moffat's interest here is "public-interest oriented" and is not "frivolous or purely commercial." Nationwide

Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 712 (D.C. Cir. 1977). Finally, the FBI has not provided a colorable basis in FOIA law for its refusal to perform "cross-reference" searches in response to Moffat's administrative request until after he filed his lawsuit. Moffat is thus entitled to an award of attorney's fees.

The Court, however, will not grant attorney's fees in the sum sought by Moffat. Because Moffat's unsuccessful litigation (largely of the summary judgment motion) can be reasonably separated from the initial portion of the litigation that catalyzed the release of responsive records, the court will not award fees related to the post-complaint litigation. See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 2011 WL 4014308, at *16-*17 (D.D.C. Sept. 12, 2011) (awarding fees in part but denying fees related to a failed claim where the claim is "truly fractionable" from the successful aspects of the FOIA litigation). Accordingly, Moffat is entitled to fees only for the time period that "includes the preparation and filing of the complaint and stops when the FBI released documents to counsel." Pl. Supp. Memo, D. #39 at ¶ 5. This time period ran from October 2, 2009 until March 12, 2010, during which Moffat's counsel expended 16 hours working on the FBI aspects of the complaint. Id.[1]

The Court notes that it awards these fees at a rate of $100 per hour. Moffat's counsel was appointed by the Massachusetts Committee for Public Counsel Services ("CPCS") and has been paid

---

[1] For all the reasons stated above, the denial of fees for the post-complaint litigation includes those fees for the 32.6 hours Moffat's counsel spent litigating Moffat's fees petition. Pl. Supp. Memo, D. #39 at ¶ 9. The Court denies the "fees for fees" portion of his request for an additional reason as well. This portion of the request, if granted, would entitle Moffat to more than twice as many attorney's fees as his attorney's fees for substantially prevailing. In this light, and in the context of this case as discussed above, the Court finds this portion of Moffat's attorney's fees request to be unreasonable, cf. Elec. Privacy Info. Ctr., 2011 WL 4014308 (discussing that hours "reasonably expended" in preparing a fee petition are compensable), and denies it.

by CPCS at a rate of $100 per hour, Pl. Supp. Memo, D. #39 at ¶ 2, rather than at Moffat's counsel's asserted market rate of $225 per hour. Id. at ¶ 4. Accordingly, the $100 rate appropriately reflects the rate at which counsel was "retained" by the Commonwealth for the purpose of representing Moffat. Although the CPCS rate may generally undervalue the worth of attorneys representing indigent defendants, the Court remains concerned that reimbursing Moffat's counsel in this case at a rate higher than his rate of retention would be inappropriate and would lead to a relative windfall in which there would be reimbursement at a rate more than twice what was expended for these 16 hours.

Accordingly, Moffat will be awarded attorney's fees for 16 hours of work at $100 per hour for a total attorney's fees award of $1,600.

**So ordered.**

/s/ Denise J. Casper
United States District Judge